**STATE OF TEXAS**

**UNITED STATES DISTRICT COURTHOUSE**

**FEDERAL HOUSTON DIVISION**

TRIAL BY JURY

PLAINTIFF

Antel C. Clark
P.O. BOX 3215
Pasadena, TX. 77501
Phone No. 734-772-3322

V

DEFENDANTS

**City of Pasadena**
1149 Ellsworth
Pasadena, Texas 77506
713-475-5516

**Pasadena Police Department**
1201 Davis Street
Pasadena, Texas 77506
713-477-1211

**Arbors At Town Square Apartments**
1000 East Curtis Avenue
Pasadena, Texas 77502
713-472-3663

**Rent Recovery Solutions**
1945 The Exchange
SE Ste 120
Atlanta, GA 30339
866-949-1379

## STATEMENT OF CLAIM

Now comes Antel C. Clark pro se.

This court has jurisdiction and venue in this court are proper because defendant resides in Harris County

This case is regarding negligence, conspiracy, breach of duty, violation of confidentiality and discrimination from Pasadena Police Department against Antel C. Clark

Conspiracy with Pasadena Police Department, breach of contract, violation of confidentiality and discrimination from Arbors at Town Square Apartments and Rent Recovery Solutions against Antel C. Clark.

Plaintiff Antel C. Clark's son Artel Savon Clark criminal case regarding armed robbery was dismissed November 29, 2021

(1) Plaintiff Antel Clark is a single father that raise his son Artel Savon Clark.

(2) Plaintiff Antel Clark is founder and CEO of Iron Flexx Sculptured Muscles And Inner Strength Center.

(3) Iron Flexx mission is to mentor and educate youths in the State of Texas through motivational speaking, nutrition and fitness challenges for youths and adults.

(4) On Friday October 23,2020 Plaintiff Antel Clark son Artel Savon Clark was fifteen years old.

(5) Plaintiff Antel Clark and his occupant Artel Savon Clark lived at Arbors At Town Square Apartments located in the City of Pasadena, TX for approximately three years.

(6) Plaintiff Antel Clark, his family, and his corporation Iron Flexx Sculptured Muscles And Inner Strength Building Center was victims of Defamation of Character, infliction of emotional distress, personal injury, violated confidentiality, Discrimination etc...

(7) On Friday October 23,2020 at 9:10pm (21:10pm),an alleged aggravated robbery occurred at 1000 Curtis ave Pasadena Texas, Arbors AT Town Square apartments Pasadena Texas.

(8) The victim resided at Arbors At Town Square apartments, and was a neighbor to Plaintiff Antel Clark.

(9) The robbery included a handgun.

(10)   The victim is unknown to Plaintiff Antel Clark and his occupant Artel Clark.

(11)   The property stolen from the victim was a portable electronic Communica, I phone/N Max value,one thousand two hundred dollars,(1,200.00),Apple watch value

at (four hundred fifty dollars),and Jeep Grand Cherokee valued at ten thousand dollars (10,000).

(12)    The Pasadena Police Officers involved  on 10/23/2020 were officer Campbell J Quintanilla M, supervisor King K.R, assisting officer Ortiz jr Sanders C.B.

(13)    The narrative information on the police report was the victim was robbed at gunpoint and her car was taken. The car was recovered in South Houston after a pursuit.

(14)    On the faithful day of Friday October 30,2020 Plaintiff Antel Clark drove his son Artel Savon Clark to Sam Rayburn High school located at 2121 Cherry Brook LN Pasadena Texas 77502.

(15)    While Plaintiff Antel Clark son Artel Savon Clark was in class officer Wilson B.S, and supervisor Murray C.A from the Pasadena Police Department wrongfully and falsely arrested him for aggravated armed robbery.

(16)    The Pasadena Police arrested Artel Savon Clark Friday October 30,2020 at 1:10 p 13:10.

(17)    Antel Clark son was not read his Miranda rights.

(18)    The narrative on the police report was information report regarding Aggravated robbery suspect.

(19)    On October 30,2020 a bunch of police cars and officers drove over to Plaintiff Antel Clark home and searched for a gun.

(20)    Pasadena Police Department did not find a gun at the residence or Plaintiff Antel Clark car.

(21) The Pasadena Police Department defamed Antel Clark, his family and corporation, by violating public disclosure of private facts.

(22) The Pasadena Police Department Shared information with the school staff, and with Arbors At Town Square Apartments staff.

(23) The Pasadena Police Department defamed Plaintiff Antel Clark, his family and Iron Flexx corp.by slander, defamation by spoken word, and spoken allegation.

(24) The Pasadena Police department caused adverse actions and harm by informing Arbors at Town Staff that the (individual),2903 Artel Savon Clark, allegedly committed the crime of armed robbery on October 23,2020 at Arbors At Town Square Apartments.

(25) As soon as the Pasadena Police department left Plaintiff Antel Clark apartment Arbors At Town Square Apartment staff walked to his apartment and personally handed him an eviction notice to leave within 24 hrs as stated in the lease.

(26) The Pasadena police department was negligent and defamed Plaintiff Antel Clark, his family and Iron Flexx Corp by failing to conduct preliminary investigation at crime scene.

(27) The Pasedena Police was negligent in thoroughly documenting the incident in police report and gathering evidence.

(28) The Pasadena Police Department is negligent in participating in mandatory and elective training.

(29) Criminal Investigation Division is negligent in its responsibility for follow up investigation reported to the Pasadena Police Department.

Arbors At Town Square

Breach OF Contract/Agreement

(1)On the faithful day of October 30,2020, Arbors Of Town Square Apartments staff walked from the office to Plaintiff Antel Clark apartment door #217 located at 1000 East Curtis Pasadena Texas 77502 concerning armed robbery that allegedly happened at the complex on October 23,2020.

(2) Two Arbors AT Town Square Apartment Staff walked down to Plaintiff Antel Clark apartment moments after a bunch of Pasadena Police left his apartment from their search for an alleged gun.

(3) No gun was found in Plaintiff Antel Clark apartment after said search.

(4) Arbors Of Town Square Apartments served Plaintiff Antel Clark an Notice Of Lease Violation claiming criminal conduct from his occupant his son Artel Savon Clark.

(5) Plaintiff Antel Clark occupant his son Artel Clark was 15 years old at the time of this situation.

(6) The staff served Plaintiff Antel Clark an Notice Of Lease Violation in which stated: You are in violation of paragraph 20 of your lease contract. It was reported by the Pasadena Police department that Antel Clark Jr (wrong name) his name is Artel Savon Clark, was arrested for the aggravated robbery that happened on the property on Friday October 23,2020. (See exhibit A) therefore violating the Confidentiality ACT.

(7)Defendant Arbor AT Town Square apartment document illegally demanded Plaintiff Antel Clark to vacate premises within twenty four hours, in which it is unfair stipulation in the lease agreement.

(8)Defendant Arbor AT Town Square Apartment lease agreements violates Plaintiff Antel Clark rental rights, and Texas law.

Arbors At Town Square

(9) Paragraph 20(a) of the lease agreement states: You, your occupants and your guest may not engage in the following activities: criminal conduct, regardless of whether or where arrest or conviction occurs, including but not limited to engaging in or threatening violence; possessing a weapon prohibiting by law, displaying or possessing a gun. see (exhibit B Lease Agreement)

(10) Plaintiff Antel Clark and his occupant, his (son Artel Savon Clark) Peace and Quiet (TEX.p Prop. Code Ann&92.008) rights was violated on this faithful day, October 30 2020.

(11) Plaintiff Antel Clark occupant (son Artel Savon Clark),were not home on October 23,2020,to engage or commit any crime thereof located at Arbors AT Town Square Apartments.

(12)Defendant Arbors At Town Square Apartments lease agreement states: paragraph(C) disturbing or threatening the rights, comfort, health, safety, or convenience of others in or near the apartment community.

(13) Plaintiff Antel Clark and His occupant (son Artel Savon Clark),in the years they lived there, never received an complaint of disturbance, threatening the rights of others, comfort, health, safety, or convenience.

(14)Defendant Arbors AT Town Square Apartments intent for (paragraph 20a and C) is to with malice racially profile against Plaintiff Antel Clark, his occupant (son Artel Clark) black tenants he mentors through his 501C3 NON-Profit corporation, Iron Flexx Sculptured Muscles And Inner Strength Building Center.

(15)Defendant Arbors AT Town Square Apartments conspired, harassed, intimidated Plaintiff Antel Clark, his occupant (son Artel Savon Clark), and two other black families known to him, and was subjected to eviction stemming from the accusation of arm robbery.

(16) On November 2021, Plaintiff Antel Clark son Artel Savon Clark case of Armed Robbery was dismissed by The Court in Texas USA.

(17) The other youths Plaintiff Antel Clark mentors were dismissed for the same arm robbery accusation, in which they also resided at Arbors AT Town Square Apartments.

(18) Plaintiff Antel Clark, his occupant son Artel Clark is innocent of any crimes and therefore were not in Default as found on section 32 of the lease agreement, (Default by Resident, Acts of Default 32.1 (see lease agreement).

(19) Plaintiff Antel Clark timely payed his rent throughout the duration of his stay at Arbors AT Town Square Apartments.

(20) Defendant Arbors At Town Square Apartment utilized their lease agreement document to conspire with the Pasadena Police Department, for the purpose to ruthlessly harm Plaintiff Antel Clark his occupant son Artel Clark and the youths and their families he mentors, with the intent to racially profile, discriminate, harass and target black tenants, to their detriment therefore defaming their character.

(21) Arbors At Town Square Apartments and the Pasadena police department violated Plaintiff Antel Clark, his family and the youths and their families, in which he mentor by illegally placing negative balances on their credit reports in attempt to cause hardship in obtaining another home, car in the State of Texas and elsewhere.

(22)Plaintiff Antel Clark disputed in a timely matter via letter any bad faith claims, inaccurate financial charges, fraudulently obtained from Defendant Arbors At Town Square Apartments. (See Exhibit).In Texas creditors and lenders such as banks and credit companies can report to credit bureaus, without a court order in regards to disputes in question.

Arbors At Town Square

(23)Defendant Arbors At town Square Apartments and Plaintiff Antel Clark agreed on a

settlement to resolve out of court their Forcible Detainer Lawsuit (case #208100296011) in the

Justice Court AT Law Precinct 8 Place 1,Harris County Texas (the Eviction suit).

(24)Defendant Arbors AT Town Square Apartment grudgingly retaliated after said agreement by

creating controversy where none exist in a bad faith course of conduct that materially interferes

with the tenants rights under the tenant lease.

(24)Defendant Arbors At Town Square Apartments acted in bad faith by retaining Plaintiff Antel

Clark security Deposit in violation of subchapter section 92.109 of the Texas property code.

(25) Defendant Arbors At Town Square Apartments therefore breached the contract and

settlement agreement with Plaintiff Antel Clark and is void.

(26) Defendant Arbors AT Town Square apartments and Rent Recovery Solutions Collection

Agency conspired by illegally and fraudulently placing a sum certain of three thousand,four

hundred seventy three dollars and thirty eight dollars (3,473.38), in which entails normal wear

and tear of years of living there,etc..and most noticeable he was charged with their attorney fees

of 1,862.46,despite settling and not going to court, on his credit report.

(27) Defendant Arbors At Town Square Apartments willingly and with malice created an

environment where a tenant feels uncomfortable, so uncomfortable that they wish to move, or

terminate a lease agreement, causing emotional distress etc...by violating the Texas Property

code, the landlord may not retain any portion of a security deposit to cover normal wear and

tear. Normal wear and tear is defined as "deterioration that results from the intended use of

dwelling including breakage or malfunction due to age or deteriorated condition, but does not

include deterioration that results from negligence, carelessness, accident, or abuse of the premises" Texas Property code 24.006 and Pulley v Millberger,198 A.Q.3d 418,428-29.

(28)Defendant Arbor AT Town Square are in violation of the FCPDA.

(29) Plaintiff Antel Clark in good faith disputed requesting validation from defendant Arbors AT Town Square Apartments pursuant to the Fair Debt Collection Practices Act, 15 USC1692g Sec.809 ((8) (FDCPA).

(30) Reporting such invalidated information to major credit bureaus constitute defamation of plaintiff Antel Clark character.

(31)The negative marks on my credit report harm my credit and prevent Antel Clark from enjoying all the benefits of good credit.

# Relief Sought

These defendants' actions affected Plaintiff Antel C. Clark, his family, and his job at Iron Flexx, they were defamed by the City of Pasadena, Pasadena Police Department, Pasadena Criminal Investigation Division by their negligence, violation of confidentiality, and discrimination.

Plaintiff Antel C. Clark and his family have been inflicted with emotional distress caused by said event on October 30, 2020, and had to seek medical professional care.

These events led to false arrest, false imprisonment of Plaintiff Antel C. Clark's son, in which resulted homelessness, four months in a shelter, and sleepless nights fighting for his sons release from juvenile jail.

Plaintiff Antel C. Clark prays that this court grant exemplary, punitive damages in the sum of 4.3 million (four.three million) against the City of Pasadena, Pasadena Police Department/Criminal Division, Arbors At Town Square Apartments, and Rent Recovery Solutions.

Sincerely

Antel Clark

10-17-2023

**County Of Harris**

**State Of Texas**

**Date: October 17, 2023**

I.      **SERVER.** I, Antel C. Clark ("Server"), declare under penalty of perjury that document(s) mentioned in Section II was delivered to recipient mentioned in Section III and delivered in the manner mentioned in Section IV.

II.     **DOCUMENTS.** The documents served described as: Summons.

III.    **RECIPIENTS. The above-mentioned documents were delivered to:**

City of Pasadena

1149 Ellsworth

Pasadena, Texas 77506

Pasadena Police Department

1201 Davis Street

Pasadena, Texas 77506

Arbors At Town Square Apartments

1000 East Curtis Avenue

Pasadena, Texas 77502

Rent Recovery Solutions

1945 The Exchange

SE Ste 120

Atlanta, GA 30339

IV. **DELIVERY.** The Server sent the documents by certified mail (with return receipts)

V. **VERIFICATION.** I declare under penalty of perjury under the laws located in this State that the forgoing is true and correct.

**Servers Signature:** [signature] **Date:** 10-17-2023

**Print Name:** Antel Clark

**NOTARY OF ACKNOWLEGEMENT**

**Before me appeared the above signee Antel C. Clark on this 17th day of October 2023.**

[signature]

**Marisol Perez Notary Public**
**State of Texas**
**Comm. Expires 05-20-2025**

MARISOL PEREZ
Notary Public, State of Texas
Comm. Expires 05-20-2025
Notary ID 125034274

Exhibit B

Confidentiality Violated Plaintiff Antel Clark and his occupant Victim ARTEL Saxon Clark

HOWARD M. BOOKSTAFF, P.C.
PARTNER
BOARD CERTIFIED-COMMERCIAL REAL ESTATE LAW
BOARD CERTIFIED-RESIDENTIAL REAL ESTATE LAW
BOARD CERTIFIED-PROPERTY OWNERS ASSOCIATION LAW
TEXAS BOARD OF LEGAL SPECIALIZATION

bookstaff@hooverslovacek.com

HOOVER SLOVACEK LLP
A REGISTERED LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
GALLERIA TOWER II
5051 WESTHEIMER, SUITE 1200
HOUSTON, TEXAS 77056
(713) 977-8686
FAX (713) 977-5395

REPLY TO:
P.O. BOX 4547
HOUSTON, TEXAS 77210

November 4, 2020

***Via Hand Delivery,***
***CMRRR & First-Class Mail***
Antel Clark and All Occupants
1000 East Curtis
Apartment No. 217
Pasadena, Texas 77502

RE: Apartment Lease Contract beginning April 1, 2018 (the "Lease") by and between Antel Clark and Arbors at Town Square Apts. (the "Owner") for Apartment No. 217 at 1000 East Curtis, Pasadena, Texas 77502 (the "Premises")

Dear Mr. Clark and All Occupants:

The undersigned attorney and law firm represent the Owner with respect to the Lease. The purpose of this letter is to notify you of your defaults of the Lease and that the Owner is exercising its right to terminate your right to possession of the Premises.

The Owner has become aware of the following Lease violations:

1. The Owner has become aware that on or about October 23, 2020, an occupant in the Premises and his guests were involved in criminal activity (aggravated robbery).

2. It is our understanding that when asked about the incident, you acted in a loud and obnoxious manner toward management personnel.

3. The Owner recently became aware that in July, an occupant of the Premises and his guests were involved in criminal activity (aggravated robbery) and that the occupant of the Premises was arrested and charged with evading and aggravated robbery.

This conduct constitutes a violation of the Lease by you including, but not limited to, the following:

1. Section 19.1 which provides that you and all guests and occupants must comply with apartment rules and community policies;

2. Section 20(a) which prohibits criminal conduct, including engaging in or threatening violence, possessing a weapon prohibited by law or displaying or possessing a gun or other weapon in a common area or in a way that may alarm others;

3.    Section 20(b) which prohibits behaving in a loud or obnoxious manner;

4.    Section 20(c) which prohibits disturbing or threatening the rights, comfort, health, safety, or convenience of others (including the Owner's agents and employees) in or near the apartment community;

5.    Section 20(d) which prohibits disrupting the Owner's business operations; and

6.    Section 32.1 which provides that you are in default of the Lease if you or any guest or occupant violate the Lease, apartment rules, or fire, safety, health, or criminal laws or if you or any occupant is arrested or detained for an offense involving actual or potential physical harm to a person.

Due to your default of the Lease, your right to occupy the Premises has been terminated. In the event you do not vacate the Premises within three (3) days from the date of this letter, it is the Owner's intention to pursue the appropriate eviction action. In any such suit, the Owner will also seek recovery of attorneys' fees, court costs, expenses, and interest. Please note that, although your right to possession is being terminated, your obligations under the Lease have not been terminated.

Nothing contained herein shall constitute an election or waiver of any rights or remedies the Owner has. It is the Owner's intention to preserve all rights and remedies. Any delay or postponement in taking any action shall not constitute a waiver of the Owner's right to take such action at any time.

*All further communication with respect to this matter should be directed to the undersigned.* If you have any questions, contact me.

Very truly yours,

HOOVER SLOVACEK LLP

Howard M. Bookstaff

HMB:sc

Exhibit B Coordinating and Conspiracy Arbors at Town and Pasadena Police department

NOTICE OF LEASE VIOLATION

October 30, 2020
Date

Re: Notice of lease violation

TAA Lease Contract signed 04/02/2018

between the resident(s) named above and

Arbors at Town Square Apts.

(owner)

Antel Clark
(Names of all residents)

1000 East Curtis, #0217
(Street Address and dwelling unit number, if applicable)

Pasadena, TX 77502
(City, State, Zip)

Dear Resident(s):

The following violations of your lease have been reported or discovered concerning you or the premises in which you reside:

| | | |
|---|---|---|
| ☒ Criminal conduct | ☐ Damage to property | ☐ Disrupting our business operati |
| ☐ Disturbance | ☐ Disturbing others | ☐ Excessive noise |
| ☐ Foil on window | ☐ Having hazardous materials | ☐ Illegal parking |
| ☐ Improper storage | ☐ Improperly heating the unit | ☐ Littered patio |
| ☐ Loud music | ☐ Loud or obnoxious behavior | ☐ Making bad faith allegations |
| ☐ Refusing to allow entry | ☐ Tampering with telecommunications | ☐ Tampering with utilities |
| ☐ Threatening others | ☐ Trash by your entry | ☐ Unauthorized animals |
| ☐ Unauthorized modification of dwelling | ☐ Unauthorized occupant | ☐ Use of windows for entry or exit |
| | | ☐ Other (explain below) |

Details of the lease violations (refer to date, location, persons involved and specific lease paragraphs): You are in violatio paragraph 20 of your lease contract. It was reported by the Pasadena Police De that Antel Clark Jr. was arrested for the Aggravated Robbery that happened on property on Friday, October 23, 2020.

Please do the following *(check one or more)*:

☒ Contact owner's representative within 24 hours ☐ in person or ☒ by telephone at 713-472-3663 to discuss the with us and to advise us what you have done or plan to do about the violations.

If you have any questions, these can be addressed when you contact the owner's representative. If you fail to timely make such contact, ar a resolution satisfactory to the owner/manager, additional action will follow as provided in your lease. Thank you for your anticipated coop

October 30, 2020
Date notice was delivered to resident or unit

[signature]
Signature of owner's representative

Manner of delivery (Optional)

For office use only:

Corrective Measures Taken by Resident and When:

By (name of owner's representative):

Exhibit C

NOTICE TO VACATE FOR NON-DELINQUENCY BREACH OF LEASE OR UNAUTHORIZED HOLDO

October 30, 2020
Date

Antel Clark
ALL OTHER OCCUPANTS
(Names of all residents)
1000 East Curtis
(Street address and dwelling unit number, if applicable)
Pasadena, TX 77502
(City, State, Zip)

Re: Notice to vacate for non-rent breach of lease
TAA Lease Contract signed April 2, 2018
between the residents named above and
Arbors at Town Square Apts.
(owner)

Dear Resident(s):

You or your occupants or guests have violated your lease contract as noted below.

Date occurred: October 23, 2020

Lease paragraph or rule numbers violated: 20

Names of persons involved (if known): Antel Clark Jr

State what occurred (attach additional pages if necessary): It was reported by Pasadena Police Dept that A Clark Jr was involved in the Aggravated robbery that occurred on the property

You committed a substantial breach of your TAA Lease Contract. We are therefore exercising our right under the lease to terminate your rights of o[illegible] and possession, effective immediately. You are still liable for rent and other charges you may owe under the lease. Demand for possession is here[illegible] and you are hereby given notice to vacate the premises on or before 11:59 p.m. November 1, 2020. If you fail to [illegible] by that time, we will file an eviction against you in Justice of the Peace court in compliance with applicable laws and rules. The court will then schedule [illegible] to consider the facts in the case. Delay or postponement by us to take such action does not waive our rights. This notice to vacate is unconditional.

October 30, 2020
Date notice was given

[signature]
Signature of owner/representative

Cristina Cruz
Printed name

(713) 472-3663
Phone number

manager@arborsattownsquareapts.com
Email address

**CAUTION:** New state, local or federal laws, rules or orders may impact requirements regarding content and delivery of this notice. Carefully read the con[illegible] to this form and consider seeking legal counsel.

Exhibit D

TEXAS APARTMENT ASSOCIATION

*This Lease Contract is valid only if filled out before January 1, 2*

# Apartment Lease Contract

This is a binding contract. Read carefully before signing.

Date of Lease Contract: April 2, 2018 (when this Lease Contract is filled out)

## Moving In — General Information

1. **Parties.** This Lease Contract ("Lease") is between you, the resident(s) (*list all people signing the Lease*): Antel Clark

and us, the owner: Arbors at Town Square Apts.

(name of apartment community or title holder). You are renting Apartment No. 0217 at 1900 East Curtin (street address) in Pasadena (city), Texas 77502 (zip code) for use as a private residence only. The terms "you" and "your" refer to all residents listed above or, in the event of a sole resident's death, to someone authorized to act for the estate. The terms "we," "us," and "our" refer to the owner listed above and not to property managers or anyone else. ***Neither we nor any of our representatives have made any oral promises, representations, or agreements. This Lease is the entire agreement between you and us.***

2. **Occupants.** The apartment will be occupied only by you and (*list all other occupants not signing the Lease*): Antel Savon Clark

—and no one else. Anyone not listed here cannot stay in the apartment for more than 3 days in one week without our prior written consent, and no more than twice that many days in any one month. *If the previous space isn't filled in, 2 days total per week will be the limit.*

3. **Lease Term.** The initial term of the Lease begins on the 1st day of April (month), 2018 (year), and ends at 11:59 p.m. the 31st day of March (month), 2019 (year). After that, this Lease will automatically renew month-to-month unless either party gives at least 30 days' written notice of termination or intent to move out as required by Par. 35. *If the number of days isn't filled in, notice of at least 30 days is required.*

4. **Security Deposit.** The total security deposit for all residents is $ 200.00 due on or before the date this Lease is signed. This amount (*check one*): ☒ does or ☐ does not include an animal deposit. Any animal deposit will be designated in an animal addendum. Security-deposit refund check and any deduction itemizations will be by (*check one*):
   ☒ one check jointly payable to all residents and mailed to any one resident we choose, or
   ☐ one check payable to and mailed to ______ (specify name of one resident).

   If neither option is checked here, the first option applies. See Par. 40 and 41 for security-deposit return information.

5. **Keys, Move-Out, and Furniture.** You'll be given 2 apartment key(s), 1 mailbox key(s), and ____ other access devices for ______. *Before moving out, you must give our representative advance written move-out notice as stated in Par. 36.* The move-out date in your notice (*check one*): ☐ must be the last day of the month, or ☒ may be the exact day designated in your notice. If neither option is checked here, the second applies. Any resident, occupant, or spouse who, according to a remaining resident's affidavit, has permanently moved out or is under court order not to enter the apartment, is (at our option) no longer entitled to occupancy, keys, or other access devices, unless authorized by court order. Your apartment will be (*check one*): ☐ furnished or ☒ unfurnished.

6. **Rent and Charges.** You will pay $ 714.00 per month for rent, in advance and without demand (*check one*):
   ☒ at the onsite manager's office
   ☐ through our online payment site
   ☐ at ______

   Prorated rent of $______ is due for the remainder of the (*check one*): ☒ 1st month or ☐ 2nd month, on the ____ day of ______ (month), ______ (year). ***You must pay your rent on or before the 1st day of each month (due date). There is no grace period for the payment of rent, and you agree that not paying rent on or before the 1st of each month is a material breach of this Lease. Cash is not acceptable without our prior written permission. You cannot withhold or offset rent unless authorized by law.*** We may, at our option, require at any time that you pay all rent and other sums in one single payment by any method we specify. If you don't pay all rent on or before the 3rd day of the month, you'll pay the reasonable initial late charge of $ 100.00, plus the reasonable daily late charge of $ 10.00 per day after that date until the amount due is paid in full. You agree that these late charges are a reasonable estimate of uncertain damages to us that are incapable of precise calculation and result from late payment of rent. Daily late charges cannot exceed 15 days for any single month's rent. We won't impose late charges until at least the third day of the month. You'll also pay a charge of $ 100.00 for each returned check or rejected electronic payment, plus initial and daily late charges, until we receive acceptable payment. If you don't pay rent on time, you'll be in default and subject to all remedies under state law and this Lease.

   AC

7. **Utilities and Services.** We'll pay for the following items, if checked: ☐ gas ☐ water ☐ wastewater ☐ electricity ☐ trash/recycling ☐ cable/satellite ☐ master antenna ☐ internet ☐ stormwater/drainage ☐ other ______. You'll pay for all other utilities and services, related deposits, and any charges or fees on such utilities and services during your Lease term. See Par. 12 for other related provisions regarding utilities and services.

8. **Insurance.** *Our insurance doesn't cover the loss of or damage to your personal property.* You are (*check one*):
   ☒ required to buy and maintain renter's or liability insurance (see attached addendum), or
   ☐ not required to buy renter's or liability insurance.

   *If neither option is checked, insurance is not required but is still strongly recommended. Even if not required, we urge you to get your own insurance for losses due to theft, fire, water, pipe leaks, and similar occurrences.* Renter's insurance doesn't cover losses due to a flood. Information on renter's insurance is available from the Texas Department of Insurance.

9. **Special Provisions.** The following or attached special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Lease and will supersede any conflicting provisions of this printed Lease form.
   No cash accepted. No personal checks accepted for late rent. If no renewal is signed, a $100 MTM charge will be due in addition to market rent.

10. **Unlawful Early Move-Out And Reletting Charge.**
    10.1 **Your Responsibility.** You'll be liable for a reletting charge of $ 606.90 (not to exceed 85% of the highest monthly rent during the Lease term) if you: (A) fail to move in, or fail to give written move-out notice as required in Par. 23 or 36; (B) move out without paying rent in full for the entire Lease term or renewal period; (C) move out at our demand because of your default; or (D) are judicially evicted. *The reletting charge is not a cancellation fee and does not release you from your obligations under this Lease.* See the next section.

Your Initials: AC

**10.2 Not a Release.** The reletting charge is neither a Lease cancellation nor a buyout fee. It is a liquidated amount covering only part of our damages—for our time, effort, and expense in finding and processing a replacement resident. These damages are uncertain and hard to ascertain—particularly those relating to inconvenience, paperwork, advertising, showing apartments, utilities for showing, checking prospects, overhead, marketing costs, and locator-service fees. You agree that the reletting charge is a reasonable estimate of our damages and that the charge is due whether or not our reletting attempts succeed. If no amount is stipulated, you must pay our actual reletting costs as far as they can be determined. The reletting charge doesn't release you from continued liability for future or past-due rent; charges for cleaning, repairing, repainting, or dealing with unreturned keys; or other sums due.

**11. Security Devices.**

**11.1 What We Provide.** *Texas Property Code secs. 92.151, 92.153, and 92.154 require, with some exceptions, that we provide at no cost to you when occupancy begins: (A) a window latch on each window; (B) a doorviewer (peephole) on each exterior door; (C) a pin lock on each sliding door; (D) either a door-handle latch or a security bar on each sliding door; (E) a keyless bolting device (deadbolt) on each exterior door; and (F) either a keyed doorknob lock or a keyed deadbolt lock on one entry door. Keyed locks will be rekeyed after the prior resident moves out. The rekeying will be done either before you move in or within 7 days after you move in, as required by law. If we fail to install or rekey security devices as required by law, you have the right to do so and deduct the reasonable cost from your next rent payment under Texas Property Code sec. 92.165(1). We may deactivate or not install keyless bolting devices on your doors if (A) you or an occupant in the dwelling is over 55 or disabled, and (B) the requirements of Texas Property Code sec. 92.153(e) or (f) are satisfied.*

**11.2 Who Pays What.** We'll pay for missing security devices that are required by law. *You'll pay for: (A) rekeying that you request (unless we failed to rekey after the previous resident moved out); and (B) repairs or replacements because of misuse or damage by you or your family, your occupants, or your guests.* You must pay immediately after the work is done unless state law authorizes advance payment. You must also pay in advance for any additional or changed security devices you request.

**12. Other Utilities and Services.** Television channels that are provided may be changed during the Lease term if the change applies to all residents. You may use utilities only for normal household purposes and must not waste them. If your electricity is interrupted, you must use only battery operated lighting (no flames). You must not allow any utilities (other than cable or Internet) to be cut off or switched for any reason —including disconnection for not paying your bills—until the Lease term or renewal period ends. If a utility is submetered or prorated by an allocation formula, we'll attach an addendum to this Lease in compliance with state-agency rules. If a utility is individually metered, it must be connected in your name and you must notify the provider of your move-out date so the meter can be timely read. If you delay getting it turned on in your name by the Lease's start date or cause it to be transferred back into our name before you surrender or abandon the apartment, you'll be liable for a $ 50.00 charge (not to exceed $50 per billing period), plus the actual or estimated cost of the utilities used while the utility should have been billed to you. If you're in an area open to competition and your apartment is individually metered, you may choose or change your retail electric provider at any time. If you qualify, your provider will be the same as ours, unless you choose a different provider. If you do choose or change your provider, you must give us written notice. You must pay all applicable provider fees, including any fees to change service back into our name after you move out.

## [illegible]

**13. Damages and Reimbursement.**

**13.1 Damage in the Apartment Community.** You must promptly pay or reimburse us for loss, damage, consequential damages, government fines or charges, or cost of repairs or service in the apartment community because of a Lease or rules violation; improper use; negligence; other conduct by you, your invitees, your occupants, or your guests; or any other cause not due to our negligence or fault as allowed by law, except for damages by acts of God to the extent they couldn't be mitigated by your action or inaction.

**13.2 Indemnification by You.** *You'll defend, indemnify and hold us harmless from all liability arising from your conduct or that of your invitees, your occupants, your guests, or our representatives who at your request perform services not contemplated in this Lease.*

**13.3 Damage and Wastewater Stoppage.** *Unless damage or wastewater stoppage is due to our negligence, we're not liable for—and you must pay for—repairs, replacements, and damage of the following kind if occurring during the Lease term or renewal period: (A) damage to doors, windows, or screens; (B) damage from windows or doors left open; and (C) damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment.*

**13.4 No Waiver.** We may require payment at any time, including advance payment to repair damage that you are liable for. Delay in demanding sums you owe is not a waiver.

**14. Contractual Lien and Property Left in Apartment.**

**14.1 Lien Against Your Property for Rent.** *All property in the apartment (unless exempt under Texas Property Code sec. 54.042) is subject to a contractual lien to secure payment of delinquent rent (except as prohibited by Texas Government Code sec. 2306.6738, for owners supported by housing-tax-credit allocations).* For this purpose, "apartment" excludes common areas but includes the interior living areas and exterior patios, balconies, attached garages, and any storerooms for your exclusive use.

**14.2 Removal After We Exercise Lien for Rent.** *If your rent is delinquent, our representative may peacefully enter the apartment, and remove and/or store all property subject to lien.* All property in the apartment is presumed to be yours unless proved otherwise. After the property is removed, a written notice of entry must be left in a conspicuous place in the apartment—including a list of items removed, the amount of delinquent rent due, and the name, address, and phone number of the person to contact. The notice must also state that the property will be promptly returned when the delinquent rent is fully paid.

**14.3 Removal After Surrender, Abandonment, or Eviction.** We, or law officers, may remove or store all property remaining in the apartment or in common areas (including any vehicles you or any occupant or guest owns or uses) if you're judicially evicted or if you surrender or abandon the apartment (see definitions in Par. 41).

**14.4 Storage.**

(A) *No duty.* We'll store property removed under a contractual lien. We may—but we have no duty to—store property removed after judicial eviction, surrender, or abandonment of the apartment.

(B) *No liability.* We're not liable for casualty, loss, damage, or theft, except for property removed under a contractual lien.

(C) *Charges you pay.* You must pay reasonable charges for our packing, removing, storing, and selling of any property.

(D) *Our lien.* We have a lien on all property removed and stored after surrender, abandonment, or judicial eviction for all sums you owe, with one exception: our lien on property listed under Texas Property Code sec. 54.042 is limited to charges for packing, removing, and storing.

**14.5 Redemption.**

(A) *Property on which we have a lien.* If we've seized and stored property under a contractual lien for rent as authorized by law, you may redeem the property by paying all delinquent rent due at the time of seizure. But if notice of sale (see Par. 14.6(C)) is given before you seek redemption, you may redeem only by paying the delinquent rent plus our reasonable charges for packing, removing, and storing.

(B) *Property removed after surrender, abandonment, or judicial eviction.* If we've removed and stored property after surrender, abandonment, or judicial eviction, you may redeem only by paying all sums you owe, including rent, late charges, reletting charges, storage charges, damages, etc.

(C) *Place and payment for return.* We may return redeemed property at the place of storage, the management office, or the apartment (at our option). We may require payment by cash, money order, or certified check.

**14.6 Disposition or Sale.**

(A) *Our options.* Except for animals, we may throw away or give to a charitable organization all personal property that is:

(1) left in the apartment after surrender, abandonment, or

(2) left outside more than 1 hour after writ of possession is executed, following judicial eviction.

(B) *Animals.* An animal removed after surrender, abandonment, or eviction may be kenneled or turned over to a local authority, humane society, or rescue organization.

(C) *Sale of property.* Property not thrown away or given to charity may be disposed of only by sale, which must be held no sooner than 30 days after written notice of the date, time, and place of sale is sent by both regular mail and certified mail (return receipt requested) to your last known address. The notice must itemize the amounts you owe and provide the name, address, and phone number of the person to contact about the sale, the amount owed, and your right to redeem the property. The sale may be public or private; is subject to any third-party ownership or lien claims; must be to the highest cash bidder; and may be in bulk, in batches, or item-by-item. If the proceeds from the sale are more than you owe, the excess amount must be mailed to you at your last known address within 30 days after sale.

**15. Failing to Pay First Month's Rent.** If you don't pay the first month's rent when or before the Lease begins, all future rent for the Lease term will be automatically accelerated without notice and become immediately due. We also may end your right of occupancy and recover damages, future rent, reletting charges, attorney's fees, court costs, and other lawful charges. Our rights, remedies and duties under Par. 10 and 32 apply to acceleration under this paragraph.

**16. Rent Increases and Lease Changes.** No rent increases or Lease changes are allowed before the initial Lease term ends, except for those allowed by special provisions in Par. 9, by a written addendum or amendment signed by you and us, or by reasonable changes of apartment rules allowed under Par. 19. If, at least 5 days before the advance-notice deadline referred to in Par. 3, we give you written notice of rent increases or Lease changes that become effective when the Lease term or renewal period ends, this Lease will automatically continue month-to-month with the increased rent or Lease changes. The new modified Lease will begin on the date stated in the notice (without needing your signature) unless you give us written move-out notice under Par. 36. The written move-out notice under Par. 36 applies only to the end of the current Lease or renewal period.

**17. Delay of Occupancy.**

**17.1 Lease Remains in Force.** We are not responsible for any delay of your occupancy caused by construction, repairs, cleaning, or a previous resident's holding over. This Lease will remain in force subject to:

(A) abatement of rent on a daily basis during delay, *and*

(B) your right to terminate the lease in writing as set forth below.

**17.2 Your Termination Rights.** Termination notice must be in writing. After termination under 17.1(B), you are entitled only to refund of any deposit(s) and any rent you paid. Rent abatement or Lease termination does not apply if the delay is for cleaning or repairs that don't prevent you from moving into the apartment.

**17.3 Notice of Delay.** If there is a delay of your occupancy and we haven't given notice of delay as set forth immediately below, you may terminate this Lease up to the date when the apartment is ready for occupancy, but not later.

(a) If we give written notice to any of you or your occupants when or after the Lease begins—and the notice states that occupancy has been delayed because of construction or a previous resident's holding over, and that the apartment will be ready on a specific date—you may terminate the Lease within 3 days after you receive written notice, but no later.

(b) If we give any of you written notice before the date the Lease begins and the notice states that a construction delay is expected and that the apartment will be ready for you to occupy on a specific date, you may terminate the Lease within 7 days after receiving written notice, but no later. The readiness date stated in the written notice becomes the new effective Lease date for all purposes. This new date can't be moved to an earlier date unless we and you agree in writing.

**18. Disclosure of Information.** If someone requests information about you or your rental history for law-enforcement, governmental, or business purposes, we may provide it. At our request, any utility provider may give us information about pending or actual connections or disconnections of utility service to your apartment.

## While You're Living in the Apartment

**19. Community Policies and Rules.**

**19.1 Generally.** Our rules are considered part of this Lease. You, your occupants, and your [illegible] written apartment rules and community policies, including instructions for care of our property. We may regulate: (A) the use of patios, balconies, and porches; (B) the conduct of furniture movers and delivery persons; and (C) activities in common areas. We may make reasonable changes to written rules, and those rules can become effective immediately if the rules are distributed and applicable to all units in the apartment community and do not change the dollar amounts on pages 1 or 2 of this Lease.

**19.2 Some Specifics.** Your apartment and other areas reserved for your private use must be kept clean. Trash must be disposed of at least weekly in appropriate receptacles in accordance with local ordinances. Passageways may be used only for entry or exit. You will use balconies with care and will not overload them. Any swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, and similar areas must be used with care and in accordance with apartment rules and posted signs.

**19.3 Limitations on Conduct.** Glass containers are prohibited in or near pools and all other common areas. Within the apartment community, you, your occupants, and your guests must not use candles or kerosene lamps or heaters without our prior written approval, or cook on balconies or outside. You, your occupants, and your guests must not solicit business or contributions. Conducting any kind of business (including child-care services) in your apartment or in the apartment community is prohibited—except that any lawful business conducted "at home" by computer, mail, or telephone is permissible if customers, clients, patients, or other business associates do not come to your apartment for business purposes.

**19.4 Exclusion of Persons.** We may exclude from the apartment community any guests or others who, in our judgment, have been violating the law, violating this Lease or our rules, or disturbing other residents, neighbors, visitors, or owner representatives. We may also exclude from any outside area or common area anyone who refuses to show photo identification or refuses to identify himself or herself as a resident, an occupant, or a guest of a specific resident in the community.

**19.5 Notice of Convictions and Registration.** You must notify us within 15 days if you or any of your occupants are convicted of (A) any felony, or (B) any misdemeanor involving a controlled substance, violence to another person, or destruction of property. You must also notify us within 15 days if you or any of your occupants register as a sex offender. Informing us of a criminal conviction or sex-offender registration doesn't waive any rights we may have against you.

**20. Prohibited Conduct.** You, your occupants, and your guests may not engage in the following activities:

(a) criminal conduct, regardless of whether or where arrest or conviction occurs, including but not limited to: manufacturing, delivering, or possessing a controlled substance or drug paraphernalia; engaging in or threatening violence; possessing a weapon prohibited by law; discharging a firearm in the apartment community; or, except when allowed by law, displaying or possessing a gun, knife, or other weapon in the common area, or in a way that may alarm others;

(b) behaving in a loud or obnoxious manner;

(c) disturbing or threatening the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near the apartment community;

(d) disrupting our business operations;

(e) storing anything in closets containing gas appliances;

(f) tampering with utilities or telecommunications;

(g) bringing hazardous materials into the apartment community;

(h) using windows for entry or exit;

(i) heating the apartment with a gas-operated cooking stove or oven; or

(j) making bad-faith or false allegations against us or our agents to others.

**21. Parking.** We may regulate the time, manner, and place of parking all cars, trucks, motorcycles, bicycles, boats, trailers, and recreational vehicles. Motorcycles or motorized bikes must not be parked inside an apartment, on sidewalks, under stairwells, or in handicapped-parking areas. We may have any unauthorized or illegally parked vehicles towed according to state law at the owner or operator's expense at any time if the vehicle:

(a) has a flat tire or is otherwise inoperable;

(b) is on jacks, on blocks, or has a wheel missing;

(c) takes up more than one parking space;

(d) belongs to a resident or occupant who has surrendered or abandoned the apartment;

(e) is in a handicapped space without the legally required handicapped insignia;

(f) is in a space marked for office visitors, managers, or staff;
(g) blocks another vehicle from exiting;
(h) is in a fire lane or designated "no parking" area;
(i) is in a space marked for another resident or apartment;
(j) is on the grass, sidewalk, or patio;
(k) blocks a garbage truck from access to a dumpster;
(l) has no current license or registration, and we have given you at least 10 days' notice that the vehicle will be towed if not removed; or
(m) is not moved to allow parking lot maintenance.

**22. Release of Resident.**

**22.1 Generally.** *You may have the right under Texas law to terminate the Lease early in certain situations involving family violence, certain sexual offenses, or stalking.* Otherwise, unless you're entitled to terminate this Lease under Par. 9, 17, 23, 31, or 36, you won't be released from this Lease for any reason—including voluntary or involuntary school withdrawal or transfer, voluntary or involuntary job transfer, marriage, separation, divorce, reconciliation, loss of coresidents, loss of employment, bad health, property purchase, or death.

**22.2 Death of Sole Resident.** If you are the sole resident and die during the Lease term, an authorized representative of your estate may terminate the Lease without penalty by giving at least 30 days' written notice. Your estate will be liable for your Lease obligations until the latter of: (A) the termination date or (B) removal of all possessions in the apartment. Your estate will also be liable for all charges and damages until the apartment is vacated, and any removal or storage costs.

**23. Military Personnel.**

**23.1 Termination Rights.** *You may have the right under Texas law to terminate the Lease in certain situations involving military deployment or transfer.* You may terminate the Lease if you enlist, are drafted into, or are commissioned in the U.S. Armed Forces. You also may terminate the Lease if:
(a) you are (1) a member of the U.S. Armed Forces or Reserves on active duty, or (2) a member of the National Guard called to active duty for more than 30 days in response to a national emergency declared by the President; *and*
(b) you (1) receive orders for a permanent change of station, (2) receive orders to deploy with a military unit or as an individual in support of a military operation for 90 days or more, or (3) are relieved or released from active duty.

**23.2 How to Terminate Under This Par. 23.** You must furnish us a copy of your military orders, such as permanent-change-of-station orders, call-up orders, or deployment orders (or letter equivalent). Military permission for base housing doesn't constitute a permanent-change-of-station order. You must deliver to us your written termination notice, after which the Lease will be terminated under this military clause 30 days after the date your next rental payment is due. After your move-out, we'll return your security deposit, less lawful deductions.

**23.3 Who May Be Released.** For the purposes of this Lease, orders described in (b) under Par. 23.1 above will release only the resident who qualifies under both (a) and (b) above and receives the orders during the Lease term, plus that resident's spouse or legal dependents living in the resident's household. A coresident who is not the spouse or dependent of a military resident cannot terminate under this military clause.

**23.4 Your Representations.** Unless you state otherwise in Par. 9, you represent when signing this Lease that:
(a) you do not already have deployment or change-of-station orders;
(b) you will not be retiring from the military during the Lease term; *and*
(c) the term of your enlistment or obligation will not end before the Lease term ends.

You must notify us immediately if you are called to active duty or receive deployment or permanent-change-of-station orders.

**23.5 Damages for False Representations.** Liquidated damages for making a false representation of the above will be the amount of unpaid rent for the remainder of the Lease term when and if you move out, minus rents from others received in mitigation under Par. 32.6.

**24. Resident Safety and Loss.**

**24.1 Disclaimer.** *We disclaim any express or implied warranties of security.* We care about your safety and that of other occupants and guests. You agree to make every effort to follow any Security Guidelines [illegible] to this Lease. *No security system is failsafe. Even the best system can't prevent crime. Always act as if security systems don't exist since they are subject to malfunction, tampering, and human error. The best safety measures are the ones you take as a matter of common sense and habit.*

**24.2 Your Duty of Due Care.** You, your occupants, and your guests must exercise due care for your own and others' safety and security, especially in using smoke alarms and other detection devices, door and window locks, and other safety or security devices. Window screens are not for security or to keep people from falling out of windows.

**24.3 Alarm and Detection Devices.**
(A) *What we'll do.* We'll furnish smoke alarms or other detection devices required by law or city ordinance. We may install additional detectors not so required. We'll test them and provide working batteries when you first take possession of your apartment. Upon request, we'll provide, as required by law, a smoke alarm capable of alerting a person with a hearing-impairment disability.
(B) *Your duties.* You must pay for and replace batteries as needed, unless the law provides otherwise. We may replace dead or missing batteries at your expense, without prior notice to you. You must immediately report alarm or detector malfunctions to us. Neither you nor others may disable alarms or detectors. *If you damage or disable the smoke alarm, or remove a battery without replacing it with a working battery, you may be liable to us under Texas Property Code sec. 92.2611 for $100 plus one month's rent, actual damages, and attorney's fees.* You'll be liable to us and others if you fail to report malfunctions, or fail to report any loss, damage, or fines resulting from fire, smoke, or water.

**24.4 Loss.** Unless otherwise required by law, we're not liable to any resident, guest, or occupant for personal injury or damage, loss of personal property, or loss of business or personal income, from any cause, including fire, smoke, rain, flood, water leaks, hail, ice, snow, lightning, wind, explosions, interruption of utilities, pipe leaks, theft, vandalism, and negligent or intentional acts of residents, occupants, or guests. We have no duty to remove any ice, sleet, or snow but may remove any amount with or without notice. Unless we instruct otherwise, during freezing weather you must for 24 hours a day: (A) keep the apartment heated to at least 50° Fahrenheit, (B) keep cabinet and closet doors open, and (C) drip hot- and cold-water faucets. You'll be liable for any damage to our and others' property caused by broken water pipes due to your violating these requirements.

**24.5 Crime or Emergency.** Immediately dial 911 or call local medical-emergency, fire, or police personnel in case of accident, fire, smoke, suspected criminal activity, or any other emergency involving imminent harm. You should then contact our representative. None of our security measures are an express or implied warranty of security—or a guarantee against crime or of reduced risk of crime. Unless otherwise provided by law, we're not liable to you, your occupants, or your guests for injury, damage, or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes. Even if previously provided, we're not obliged to furnish security personnel, patrols, lighting, gates, fences, or other forms of security unless required by law. We're not responsible for obtaining criminal-history checks on any residents, occupants, guests, or contractors in the apartment community. If you, your occupants, or your guests are affected by a crime, you must make a written report to the appropriate local law-enforcement agency and to our representative. You must also give us the law-enforcement agency's incident-report number upon request.

**25. Condition of the Premises and Alterations.**

**25.1 As-Is.** *We disclaim all implied warranties.* You accept the apartment, fixtures, and furniture as is, except for conditions materially affecting the health or safety of ordinary persons. You'll be given an Inventory & Condition form on or before move-in. Within 48 hours after move-in, you must note on the form all defects or damage, sign the form, and return it to us. Otherwise, everything will be considered to be in a clean, safe, and good working condition.

**25.2 Standards and Improvements.** You must use customary diligence in maintaining the apartment and not damaging or littering the common areas. Unless authorized by law or by us in writing, you must not do any repairs, painting, wallpapering, carpeting, electrical changes, or otherwise alter our property. No holes or stickers are allowed inside or outside the apartment. Unless our rules state otherwise, we'll permit a [illegible] of small nail holes for hanging pictures [illegible]

water furniture, washing machines, extra phone or television outlets, alarm systems, or lock changes, additions, or rekeying is permitted unless allowed by law or we've consented in writing. You may install a satellite dish or antenna, but only if you sign our satellite-dish or antenna lease addendum, which complies with reasonable restrictions allowed by federal law. You must not alter, damage, or remove our property, including alarm systems, detection devices, furniture, telephone and television wiring, screens, locks, and security devices. When you move in, we'll supply light bulbs for fixtures we furnish, including exterior fixtures operated from inside the apartment; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements to the apartment (made with or without our consent) become ours unless we agree otherwise in writing.

25.3 **Fair Housing.** In accordance with fair-housing laws, we'll make reasonable accommodations to our rules, policies, practices, or services. We'll allow reasonable modifications under these laws to give disabled persons access to and use of this apartment community. We may require you to sign an addendum regarding the implementation of any accommodations or modifications, as well as your restoration obligations, if any.

**26. Requests, Repairs, and Malfunctions.**

26.1 **Written Requests Required.** ***If you or any occupant needs to send a notice or request—for example, for repairs, installations, services, ownership disclosure, or security-related matters—it must be written, signed, and delivered to our designated representative in accordance with our policies*** (except in case of fire, smoke, gas, explosion, overflowing sewage, uncontrollable running water, electrical shorts, crime in progress, or fair-housing accommodation or modification). Our written notes on your oral request do not constitute a written request from you. Our complying with or responding to any oral request regarding security or any other matter doesn't waive the strict requirement for written notices under this Lease.

26.2 **Required Notifications.** You must promptly notify us in writing of water leaks, mold, electrical problems, malfunctioning lights, broken or missing locks or latches, and other conditions that pose a hazard to property, health, or safety.

26.3 **Utilities.** We may change or install utility lines or equipment serving the apartment if the work is done reasonably without substantially increasing your utility costs. We may turn off equipment and interrupt utilities as needed to avoid property damage or to perform work. If utilities malfunction or are damaged by fire, water, or similar cause, you must notify our representative immediately.

26.4 **Casualty Loss and Equipment Repair.** We'll act with customary diligence to make repairs and reconnections, taking into consideration when casualty-insurance proceeds are received. Unless required by statute after a casualty loss, or during equipment repair, your rent will not abate in whole or in part. Air-conditioning problems are normally not emergencies. If air-conditioning or other equipment malfunctions, you must notify us as soon as possible on a business day.

26.5 **Our Right to Terminate.** If we believe that fire or catastrophic damage is substantial, or that performance of needed repairs poses a danger to you, we may terminate this Lease by giving you at least 5 days' written notice. We also have the right to terminate this Lease during the Lease term by giving you at least 30 days' written notice of termination if we are demolishing your apartment or closing it and it will no longer be used for residential purposes for at least 6 months. If the Lease is so terminated, we'll refund prorated rent and all deposits, less lawful deductions. We may also remove and dispose of personal property if we believe it causes a health or safety hazard.

**27. Animals.**

27.1 **No Animals Without Consent.** ***No animals (including mammals, reptiles, birds, fish, rodents, amphibians, arachnids, and insects) are allowed, even temporarily, anywhere in the apartment or apartment community unless we've given written permission.*** If we allow an animal, you must sign a separate animal addendum and, except as set forth in the addendum, pay an animal deposit. An animal deposit is considered a general security deposit. The animal addendum includes information governing animals, including assistance or service animals. We'll authorize an assistance or support animal for a disabled person without requiring an animal deposit. We may require verification of your disability and the need for such an animal. You must not feed stray or wild animals.

27.2 **Violations of Animal Policies.**

(A) ***Charges for violations.*** If you or any guest or occupant violates animal restrictions (with or without your knowledge), you'll be subject to charges, damages, eviction, and other remedies provided in this Lease. If you violate the animal restrictions or other animal rules, you'll pay an initial charge of $100.00 per animal (not to exceed $100 per animal) and a daily charge of $10.00 per animal (not to exceed $10 per day per animal) from the date the animal was brought into your apartment until it is removed. If an animal has been in the apartment at any time during your term of occupancy (with or without our consent), you must pay for all cleaning and repair costs, including defleaing, deodorizing, and shampooing.

(B) ***Removal and return of animal.*** We may remove an unauthorized animal by (1) leaving, in a conspicuous place in the apartment, a written notice of our intent to remove the animal within 24 hours; and (2) following the procedures of Par. 28. We may keep or kennel the animal, or turn it over to a humane society, local authority or rescue organization. When keeping or kenneling an animal, we won't be liable for loss, harm, sickness, or death of the animal unless due to our negligence. You must pay for the animal's reasonable care and kenneling charges. We'll return the animal to you upon request if it has not already been turned over to a humane society, local authority or rescue organization.

**28. When We May Enter.** If you or any guest or occupant is present, then repairers, servicers, contractors, government representatives, lenders, appraisers, prospective residents or buyers, insurance agents, persons authorized to enter under your rental application, or our representatives may peacefully enter the apartment at reasonable times for reasonable business purposes. If nobody is in the apartment, then any such person may enter peacefully and at reasonable times by duplicate or master key (or by breaking a window or other means when necessary) for reasonable business purposes if written notice of the entry is left in a conspicuous place in the apartment immediately after the entry. Law officers with a search or arrest warrant or those in hot pursuit may be allowed to enter. We are under no obligation to enter only when you are present, and we may, but are under no obligation to, give prior notice or make appointments.

**29. Multiple Residents.** Each resident is jointly and severally liable for all Lease obligations. If you or any guest or occupant violates the Lease or rules, all residents are considered to have violated the Lease. Our requests and notices (including sale notices) to any resident constitute notice to all residents and occupants. Notices and requests from any resident or occupant constitute notice from all residents. Your notice of Lease termination may be given only by a resident. In eviction suits, each resident is considered the agent of all other residents in the apartment for service of process. Any resident who defaults under this Lease will indemnify the nondefaulting residents and their guarantors.

## Replacements

**30. Replacements and Subletting.**

30.1 **When Allowed.** Replacing a resident, subletting, licensing or assigning a resident's rights is allowed ***only when we consent in writing.*** If a departing or remaining resident finds a replacement resident acceptable to us before moving out and we expressly consent to the replacement, subletting, or assignment, then:

(a) a reletting charge will not be due;
(b) a reasonable administrative (paperwork) fee will be due, and a rekeying fee will be due if rekeying is requested or required; *and*
(c) the departing and remaining residents will remain liable for all Lease obligations for the rest of the original Lease term.

30.2 **Procedures for Replacement.** If we approve a replacement resident, then, at our option: (A) the replacement resident must sign this Lease with or without an increase in the total security deposit; or (B) the remaining and replacement residents must sign an entirely new Lease. Unless we agree otherwise in writing, the departing resident's security deposit will automatically transfer to the replacement resident as of the date we approve. The departing resident will no longer have a right to occupancy or to a security-deposit refund, but will remain liable for the remainder of the original Lease term unless we agree otherwise in writing— even if a new Lease is signed.

30.3 **Rental Prohibited.** You agree that you won't rent, or offer to rent or license all or any part of your apartment to anyone else unless otherwise agreed to by us in writing. You agree that you won't accept anything of value from anyone else for the use of any part of your apartment. You agree not to list any part of your apartment on any lodging rental website or with any person or service that advertises dwellings for rent.

## Responsibilities of Owner and Resident

**31. Our Responsibilities.**

**31.1 Generally.** We'll act with customary diligence to:
(a) keep common areas reasonably clean, subject to Par. 25;
(b) maintain fixtures, hot water, heating, and air-conditioning equipment;
(c) substantially comply with all applicable laws regarding safety, sanitation, and fair housing; *and*
(d) make all reasonable repairs, subject to your obligation to pay for damages for which you're liable.

The time, manner, method and means of performing maintenance and repairs, including whether or which vendors to use, are within our sole discretion.

**31.2 Your Remedies.** ***If we violate any of the above, you may possibly terminate this Lease and exercise other remedies under Texas Property Code Sec. 92.056 by following this procedure:***
(a) all rent must be current, and you must make a written request for repair or remedy of the condition—after which we'll have a reasonable time for repair or remedy;
(b) if we fail to do so, you must make a second written request for the repair or remedy (to make sure that there has been no miscommunication between us)—after which we'll have a reasonable time to repair or remedy; *and*
(c) if the repair or remedy still hasn't been accomplished within that reasonable time period, you may immediately terminate this Lease by giving us a final written notice.

***You also may exercise other statutory remedies, including those under Texas Property Code sec. 92.0561.***

**31.3 Request by Mail.** Instead of giving the two written requests referred to above, you may give us one request by certified mail, return receipt requested, by registered mail, or by any trackable mail or delivery method through the postal service or a private delivery service—after which we'll have a reasonable time to repair or remedy. "Reasonable time" accounts for the nature of the problem and the reasonable availability of materials, labor, and utilities. Your rent must be current when you make any request. We'll refund security deposits and prorated rent as required by law.

**32. Default by Resident.**

**32.1 Acts of Default.** You'll be in default if: (A) you don't timely pay rent or other amounts you owe; (B) you or any guest or occupant violates this Lease, apartment rules, or fire, safety, health, or criminal laws, regardless of whether or where arrest or conviction occurs; (C) you abandon the apartment; (D) you give incorrect or false answers in a rental application; (E) you or any occupant is arrested, charged, detained, convicted, or given deferred adjudication or pretrial diversion for (1) an offense involving actual or potential physical harm to a person, or involving the manufacture or delivery of a controlled substance, marijuana, or drug paraphernalia as defined in the Texas Controlled Substances Act, or (2) any sex-related crime, including a misdemeanor; (F) any illegal drugs or paraphernalia are found in your apartment; or (G) you or any occupant, in bad faith, makes an invalid habitability complaint to an official or employee of a utility company or the government.

**32.2 Eviction.** ***If you default or hold over, we may end your right of occupancy by giving you at least a 24-hour written notice to vacate.*** Notice may be given by: (A) regular mail; (B) certified mail, return receipt requested; (C) personal delivery to any resident; (D) personal delivery at the apartment to any occupant over 16 years old; (E) affixing the notice to the inside of the apartment's main entry door; or (F) securely affixing the notice to the outside of the apartment's main entry door as allowed by law. Notice by mail under (A) or (B) will be considered delivered on the earlier of actual delivery, or 3 days after the notice is deposited in the U.S. Postal Service with postage. Termination of your possession rights or a later reletting doesn't release you from liability for future rent or other Lease obligations. ***After giving notice to vacate or filing an eviction suit, we may still accept rent or other sums due;*** the filing or acceptance doesn't waive or diminish our right of eviction or any other contractual or statutory right. Accepting money at any time doesn't waive our right to damages, to past or future rent or other sums, or to our continuing with eviction proceedings. ***In an eviction, rent is owed for the full rental period and will not be prorated.***

**32.3 Acceleration.** Unless we elect not to accelerate rent, all monthly rent for the rest of the Lease term or renewal period will be accelerated automatically without notice or demand (before or after acceleration) and will be immediately due and delinquent if, without our written consent: (A) you move out, remove property in preparing to move out, or you or any occupant gives oral or written notice of intent to move out before the Lease term or renewal period ends; and (B) you haven't paid all rent for the entire Lease term or renewal period. Such conduct is considered a default for which we need not give you notice. Remaining rent will also be accelerated if you're judicially evicted or move out when we demand because you've defaulted. Acceleration is subject to our mitigation obligations below.

**32.4 Holdover.** You or any occupant, invitee, or guest must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing). If a holdover occurs, then (A) holdover rent is due in advance on a daily basis and may become delinquent without notice or demand; (B) rent for the holdover period will be increased by 25% over the then-existing rent, without notice; (C) you'll be liable to us (subject to our mitigation duties) for all rent for the full term of the previously signed Lease of a new resident who can't occupy because of the holdover; and (D) at our option, we may extend the Lease term—for up to one month from the date of notice of Lease extension—by delivering written notice to you or your apartment while you continue to hold over.

**32.5 Other Remedies.** We may report unpaid amounts to credit agencies as allowed by law. If we or our debt collector tries to collect any money you owe us, you agree that we or the debt collector may contact you by any legal means, including texting, calling your cell phone, and using an automated dialer. If you default, you will pay us, in addition to other sums due, any amounts stated to be rental discounts or concessions agreed to in writing. Upon your default, we have all other legal remedies, including Lease termination and statutory lockout under Texas Property Code sec. 92.0081, ***except as lockouts and liens are prohibited by Texas Government Code sec. 2306.6738 for owners supported by housing-tax-credit allocations.*** A prevailing party may recover reasonable attorney's fees and all other litigation costs from the nonprevailing parties, except a party may not recover attorney's fees and litigation costs in connection with a party's claims seeking personal-injury, sentimental, exemplary or punitive damages. We may recover attorney's fees in connection with enforcing our rights under this Lease. All unpaid amounts you owe, including judgments, bear 18% interest per year from the due date, compounded annually. You must pay all collection-agency fees if you fail to pay sums due within 10 days after we mail you a letter demanding payment and stating that collection-agency fees will be added if you don't pay all sums by that deadline.

**32.6 Mitigation of Damages.** If you move out early, you'll be subject to Par. 10 and all other remedies. We'll exercise customary diligence to relet and minimize damages. We'll credit all later rent that we actually receive from subsequent residents against your liability for past-due and future rent and other sums due.

## General Provisions

**33. Other Important Provisions.**

**33.1 Representatives' Authority; Waivers; Notice.** ***Our representatives (including management personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease or any part of it unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives, unless in writing.*** Any dimensions and sizes provided to you relating to the apartment are only approximations or estimates; actual dimensions and sizes may vary. No action or omission by us will be considered a waiver of our rights or of any subsequent violation, default, or time or place of performance. ***Our choice to enforce, not enforce or delay enforcement of written-notice requirements, rental due dates, acceleration, liens, or other rights isn't a waiver under any circumstances.*** Except when notice or demand is required by law, you waive any notice and demand for performance from us if you default. If anyone else has guaranteed performance of this Lease, a separate Lease Guaranty for each guarantor must be executed. Written notice to or from our managers constitutes notice to or from us. Any person giving a notice under this Lease should keep a copy or record of it. Fax or electronic signatures are binding. All notices must be signed. Notice may be given electronically by us to you if allowed by law. If allowed by law and in accordance with our policies, electronic notice *from you to us* must be addressed to the email address we provide for notice purposes or submitted through an online portal.

**33.2 Miscellaneous.** All remedies are cumulative. Exercising one remedy won't constitute an election or waiver of other remedies. All provisions regarding our nonliability or nonduty apply to our employees, agents, and management companies. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf. This Lease binds subsequent owners. This Lease is subordinate to existing and future recorded mortgages, unless the owner's lender chooses otherwise. All Lease obligations must be performed in the county where the apartment is located. If you have insurance covering the apartment or your personal belongings at the time you or we suffer or allege a loss, you agree to waive any insurance subrogation rights. All notices and documents may be in English and, at our option, in any other language that you read or speak. The term "including" in this Lease should be interpeted to mean "including but not limited to."

**33.3 Severability.** If any provision of this Lease is invalid or unenforceable under applicable law, it won't invalidate the remainder of the Lease or change the intent of the parties. Neither an invalid clause nor the omission of initials on any page invalidates this Lease.

**34. Payments.** Payment of each sum due is an independent covenant. When we receive money, other than sale proceeds under Par. 14 or water payments subject to government regulation, we may apply it at our option and without notice first to any of your unpaid obligations, then to current rent. We may do so regardless of notations on checks or money orders and regardless of when the obligations arose. All sums other than rent are due upon our demand. After the due date, we do not have to accept any payments.

**35. TAA Membership.** We represent that, at the time of signing this Lease, we, the management company representing us, or any locator service that procured you is a member in good standing of both the Texas Apartment Association and the affiliated local apartment association for the area where the apartment is located. The member is either an owner/management-company member or an associate member doing business as a locator service (whose name and address must be disclosed on page 6). If not, the following applies: (A) this Lease is voidable at your option and is unenforceable by us (except for property damages); and (B) we may not recover past or future rent or other charges. The above remedies also apply if both of the following occur: (1) the Lease is automatically renewed on a month-to-month basis more than once after membership in TAA and the local association has lapsed; and (2) neither the owner nor the management company is a member of TAA and the local association during the third automatic renewal. A signed affidavit from the affiliated local apartment association attesting to nonmembership when the Lease or renewal was signed will be conclusive evidence of nonmembership. Governmental entities may use TAA forms if TAA agrees in writing.

## When Moving Out

**36. Move-Out Notice.**

**36.1 Requirements and Compliance.** Your move-out notice doesn't release you from liability for the full term of the Lease or renewal term. You'll still be liable for the entire Lease term if you move out early except under Par. 9, 17, 22, 23, or 31. *Your move-out notice must comply with each of the following:*

(a) We must receive advance written notice of your move-out date. You must give notice in advance by at least the number of days required in Par. 3 or in special provisions—even if the Lease has become a month-to-month lease. Unless we require more than 30 days' notice, if you give notice on the first day of the month you intend to move out, it will suffice for move-out on the last day of that month, as long as all other requirements below are met.

(b) Your move-out notice must be in writing. An oral move-out notice will not be accepted and will not terminate your Lease.

(c) Your move-out notice must not terminate the Lease sooner than the end of the Lease term or renewal period.

(d) If we require you to give us more than 30 days' written notice to move out before the end of the Lease term, we will give you 1 written reminder not less than 5 days nor more than 90 days before your deadline for giving us your written move-out notice. If we fail to give a reminder notice, 30 days' written notice to move-out is required.

**36.2 Unacceptable Notice.** *Your notice is not acceptable if it doesn't comply with all of the above.* We recommend that you use our written move-out form to ensure that you provide all the information needed. You must get from us a written acknowledgment of your notice. If we fail to give a reminder notice, 30 days' written notice to move out is required. If we terminate the Lease, we must give you the same advance notice—unless you are in default. [illegible]

**37. Move-Out Procedures.** The move-out date can't be changed unless we and you both agree in writing. You won't move out before the Lease term or renewal period ends unless all rent for the entire Lease term or renewal period is paid in full. Early move-out may result in reletting charges and acceleration of future rent under Par. 10 and 32. You're prohibited by law from applying any security deposit to rent. You can't stay beyond the date you're supposed to move out. All residents, guests, and occupants must surrender or abandon the apartment before the 30-day period for deposit refund begins. You must give us and the U.S. Postal Service, in writing, each resident's forwarding address.

**38. Cleaning.** You must thoroughly clean the apartment, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges—including charges for cleaning carpets, draperies, furniture, walls, etc. that are soiled beyond normal wear (that is, wear or soiling that occurs without negligence, carelessness, accident, or abuse).

**39. Move-Out Inspection.** You should meet with our representative for a move-out inspection. Our representative has no authority to bind or limit us regarding deductions for repairs, damages, or charges. Any statements or estimates by us or our representative are subject to our correction, modification, or disapproval before final accounting or refunding.

**40. Security Deposit Deductions and Other Charges.** You'll be liable for the following charges, if applicable: unpaid rent; unpaid utilities; unreimbursed service charges; repairs or damages caused by negligence, carelessness, accident, or abuse, including stickers, scratches, tears, burns, stains, or unapproved holes; replacement cost of our property that was in or attached to the apartment and is missing; replacing dead or missing alarm or detection-device batteries at any time; utilities for repairs or cleaning; trips to let in company representatives to remove your telephone, Internet, television services, or rental items (if you so request or have moved out); trips to open the apartment when you or any guest or occupant is missing a key; unreturned keys; missing or burned-out light bulbs; removing or rekeying unauthorized security devices or alarm systems; agreed reletting charges, packing, removing, or storing property removed or stored under Par. 14; removing illegally parked vehicles; special trips for trash removal caused by parked vehicles blocking dumpsters; false security-alarm charges unless due to our negligence; animal-related charges under Par. 6 and 27; government fees or fines against us for violation (by you, your occupants, or your guests) of local ordinances relating to alarms and detection devices, false alarms, recycling, or other matters; late-payment and returned-check charges; a charge (not to exceed $150) for our time and inconvenience in our lawful removal of an animal or in any valid eviction proceeding against you, plus attorney's fees, court costs, and filing fees actually paid; and other sums due under this Lease. You'll be liable to us for: (A) charges for replacing any keys and access devices referenced in Par. 5 if you don't return them all on or before your actual move-out date; (B) accelerated rent if you've violated Par. 32; and (C) a reletting fee if you've violated Par. 10. ***We may also deduct from your security deposit our reasonable costs incurred in rekeying security devices required by law if you vacate the apartment in breach of this Lease.***

**41. Deposit Return, Surrender, and Abandonment.**

**41.1 Your Deposit.** We'll mail you your security-deposit refund (less lawful deductions) and an itemized accounting of any deductions, no later than 30 days after surrender or abandonment, unless laws provide otherwise.

**41.2 Surrender.** You have *surrendered* the apartment when: (A) the move-out date has passed and no one is living in the apartment in our reasonable judgment; or (B) apartment keys and access devices listed in Par. 5 have been turned in to us—whichever happens first.

**41.3 Abandonment.** You have *abandoned* the apartment when all of the following have occurred: (A) everyone appears to have moved out in our reasonable judgment; (B) clothes, furniture, and personal belongings have been substantially removed in our reasonable judgment; (C) you've been in default for nonpayment of rent for 5 consecutive days, or water, gas, or electric service for the apartment not connected in our name has been terminated or transferred; *and* (D) you've not responded for 2 days to our notice left on the inside of the main entry door stating that we consider the apartment abandoned. An apartment is also considered abandoned 10 days after the death of a sole resident.

**41.4 The Ending of Your Rights.** Surrender, abandonment, or judicial eviction ends your right of possession for all purposes and gives us the immediate right to clean up, make repairs in, and relet the apartment; determine any security-deposit deductions; and remove property left in the apartment. Surrender, abandonment, and judicial eviction affect our rights to property left in the apartment (Par. 14), but [illegible]

## SUMMARY OF KEY INFORMATION

*The Lease will control if there's a conflict with this summary.*

- Address: 1000 East Curtis Unit # 0217
- Beginning date of Lease (Par. 3) 04/01/2018
- Ending date of Lease (Par. 3) 03/31/2019
- Number of days notice for termination (Par. 3) 30
- Consent for guests staying more than 3 days (Par. 2)
- Total security deposit (Par. 4) $ 200.00
- Animal deposit (if any) $ 250.00
- Security deposit (Par. 4) ☒ does OR ☐ does not include an animal deposit.
- Security deposit refund check will be by (Par. 4) (*check one*) ☒ one check jointly payable to all residents (default), OR ☐ one check payable to and mailed to
- # of keys/access devices (Par. 5) for 2 unit, 1 mailbox, ___ other
- Your move-out notice will terminate Lease on (Par. 5): (*check one*) ☐ last day of month OR ☐ exact day designated in notice
- Check here ☐ if the dwelling is to be furnished (Par. 5)
- Check here ☐ if there is a concession addendum
- Rent to be paid (Par. 6): (*check all that apply*) ☒ at the onsite manager's office, ☐ through our online payment site, OR ☐ at
- Check here if included in monthly rent: ☐ garage, ☐ storage, ☐ carport, ☐ washer/dryer, or ☐ other
- Total monthly rent (Par. 6) $ 714.00
- Prorated rent (Par. 6) for (*check one*) ☒ first month OR ☐ second month $
- Late charges if rent is not paid on or before (Par. 6) 3rd
- Initial late charge (Par. 6) $ 100.00
- Daily late charge (Par. 6) $ 10.00
- Returned-check charge (Par. 6) $ 100.00
- Animal violation charges (Par. 27) Initial $ 100.00 Daily $ 10.00
- Monthly animal rent (if any) $
- Monthly pest control (if any) $
- Monthly trash / waste (if any) $
- Utilities paid by owner (Par. 7): (*check all that apply*) ☐ electricity, ☐ gas, ☐ water, ☐ wastewater, ☐ trash/recycling, ☐ cable/satellite, ☐ master antenna, ☐ Internet, ☐ stormwater/drainage, ☐ other
- Utility connection charge (Par. 12) $ 50.00
- You are (*check one*) ☒ required to buy insurance OR ☐ not required to buy insurance (Par. 8)
- Agreed reletting charge (Par. 10) $ 606.90
- Special provisions (Par. 9): No cash accepted. No personal checks accepted for late rent. If no renewal is signed, a $100 MTM charge will be due in addition to market rent.

## Signatures and More Content

**42. Attachments.** We will provide you with a copy of the Lease as required by statute. This may be in paper format, in an electronic format if you request it, or by e-mail if we have communicated by e-mail about this Lease. Our rules and community policies, if any, will be attached to the Lease and given to you at signing. When an Inventory and Condition form is completed, both you and we should retain a copy. The items checked below are attached to and become a part of this Lease and are binding even if not initialed or signed.

- ☐ Access Gate Addendum
- ☒ Additional Special Provisions
- ☒ Allocation Addendum for: ☐ electricity ☒ water ☐ gas ☐ central system costs ☐ trash/recycling ☐ cable/satellite ☐ stormwater/drainage ☐ services/government fees
- ☒ Animal Addendum
- ☒ Apartment Rules or Community Policies
- ☐ Asbestos Addendum (if asbestos is present)
- ☒ Bed Bug Addendum
- ☐ Early Termination Addendum
- ☐ Enclosed Garage, Carport, or Storage Unit Addendum
- ☐ Intrusion Alarm Addendum
- ☒ Inventory & Condition Form
- ☒ Lead Hazard Information and Disclosure Addendum
- ☐ Lease Contract Addendum for Units Participating in Government Regulated Affordable Housing Programs
- ☐ Lease Contract Guaranty (guaranties, if more than one)
- ☐ Legal Description of Apartment (optional, if rental term longer than one year)
- ☐ Military SCRA Addendum
- ☒ Mold Information and Prevention Addendum
- ☐ Move-Out Cleaning Instructions
- ☐ Notice of Intent to Move Out Form
- ☐ Parking Permit or Sticker (quantity: ____)
- ☐ Rent Concession Addendum
- ☐ Renter's or Liability Insurance Addendum
- ☐ Repair or Service Request Form
- ☒ Satellite Dish or Antenna Addendum
- ☐ Security Guidelines Addendum
- ☐ PUC Tenant Guide to Water Allocation
- ☐ Utility Submetering Addendum: ☐ electricity ☐ water ☐ gas
- ☐ Other
- ☐ Other
- ☐ Other
- ☐ Other

*Name, address and telephone number of locator service (if applicable —must be completed to verify TAA membership under Par. 35):*

After-hours phone number (713) 472-3633
(Always call 911 for police, fire, or medical emergencies.)

Date form is filled out (same as on top of page 1) [illegible]

**43. Class Action Waiver.** You agree that you will not participate in any class action claims against us or our representatives. You must file any claim against us individually, and *you expressly waive your ability to bring, represent, join or otherwise maintain a class action, collective action or similar proceeding against us in any forum.*

YOU UNDERSTAND THAT, WITHOUT THIS WAIVER, YOU COULD BE A PARTY IN A CLASS ACTION LAWSUIT. BY SIGNING THIS LEASE, YOU ACCEPT THIS WAIVER AND CHOOSE TO HAVE ANY CLAIMS DECIDED INDIVIDUALLY. THE PROVISIONS OF THIS PAR. 43 SHALL SURVIVE THE TERMINATION OR EXPIRATION OF THIS LEASE.

Resident Initials: AC

You are legally bound by this document. Please read it carefully. A facsimile or electronic signature on this Lease is as binding as an original signature.

Before submitting a rental application or signing a Lease, you may take a copy of these documents to review and/or consult an attorney. Additional provisions or changes may be made in the Lease if agreed to in writing by all parties.

You are entitled to receive a copy of this Lease after it is fully signed. Keep it in a safe place. This Lease is the entire agreement between you and us. You are NOT relying on any oral representations.

Resident or Residents (all sign below)

[signature] 4-3-18
(Name of Resident) Date signed

(Name of Resident) Date signed

(Name of Resident) Date signed

(Name of Resident) Date signed

(Name of Resident) Date signed

(Name of Resident) Date signed

Owner or Owner's Representative (signing on behalf of owner)

[signature]

Address and phone number of owner's representative for notice purposes

1000 East Curtis
Pasadena, Texas 77502



Exhibit L Sent 10-4-2021

1945 The Exchange SE, Ste 120
Atlanta, GA 30339-2062
Hours of Operation:8:00 AM to 5:00 PM Eastern Standard Time

RENT RECOVERY

9/22/2021

ANTEL CLARK
Po Box 3215
Pasadena, TX 77501-3215

PAYMENT OPTIONS

| Online at rentrecoverysolutions com/pay-now/ | By calling 866-949-1379 | Mailing a check to Rent Recovery Solutions LLC, 1945 The Exchange SE, Ste 120, Atlanta, GA 30339 | Moneygram using Receive Code 6839. City: Atlanta, GA. Include your file number. |
|---|---|---|---|

# Notice of Collection

File No.
007238698

Creditor: ARBORS AT TOWN SQUARE
Balance: $3,473.38

Dear ANTEL CLARK,

Please be advised that Rent Recovery Solutions represents ARBORS AT TOWN SQUARE in its effort to collect your delinquent debt as shown above. We request and require that this matter receive your immediate attention.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice this office will provide you with a name and address of the original creditor, if different from the current creditor.

This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.

Sincerely,

Account Representative

 RENT/R01/ABC089776132 510300000495