Case 4:23-cv-04050   Document 58   Filed on 09/30/24 in TXSD   Page 1 of 17

United States District Court
Southern District of Texas
**ENTERED**
September 30, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ANTEL C. CLARK, § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:23-CV-04050 |
| § | |
| CITY OF PASADENA, *et al.*, § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are motions to dismiss filed by Defendants City of Pasadena ("City") (Dkt. 33), Arbors at Town Square Apartments ("Arbors") (Dkt. 34), Rent Recovery Solutions ("Rent Recovery") (Dkt. 31), and the Texas Office of Attorney General ("OAG") (Dkt. 55). The City has also filed a motion to enter judgment (Dkt. 39). Having carefully reviewed the complaint, motions, responses, reply, and applicable law, the Court **GRANTS** the motions to dismiss and **DENIES** the motion to enter judgment as **MOOT**. Further, the Court finds the suit against the Pasadena Police Department ("Police Department") must be **DISMISSED**.

## FACTUAL BACKGROUND

Plaintiff Antel C. Clark ("Clark") proceeds *pro se* and *in forma pauperis* in this action. Clark's 15-year-old son was arrested by the Police Department for an aggravated robbery that took place at Arbors, where Clark and his son lived at the time. (Dkt. 1 at pp. 3–4). Pasadena police officers disclosed to Arbors that Clark's son had "allegedly

1

committed the . . . armed robbery." (*Id*. at p. 5). In response, Arbors informed Clark that he was in violation of his lease—which prohibited "criminal conduct, regardless of whether or where arrest or conviction occurs"—and gave Clark 24 hours to vacate his apartment. (*Id*. at 6–7). Arbors then brought a forcible detainer suit against Clark. (Dkt. 1-1 at p. 9). Although the parties "agreed on a settlement to resolve [the suit] out of court," Arbors breached the agreement by withholding Clark's security deposit. *Id*. Arbors, in concert with Rent Recovery, then placed a $3,473.38 debt on Clark's credit report. (Dkt. 1 at p. 9). The criminal charges against Clark's son were subsequently dismissed. (*Id*. at p. 8).

Clark requested information regarding his son's arrest from the City under Texas's Public Disclosure Act. (Dkt. 54 at p. 3). The City sought a ruling from the OAG on disclosing the materials, and the OAG determined that the City must withhold the information. (*Id*. at p. 15). Despite letters and a phone call from Clark, the OAG declined to reconsider its decision. (*Id*. at pp. 4–5). Clark then filed this action against defendants. *Id*.

While his pleadings and legal theories are difficult to parse, Clark has brought claims against all defendants under 42 U.S.C. § 1983 for violations of his rights under the Fourth and Sixth Amendments to the U.S. Constitution, along with conspiracy to commit these violations. (Dkt. 54 at pp. 2–6). He has also brought claims against Arbors and Rent Recovery for violations of unspecified "1983 civil … and constitutional rights," his Fourteenth Amendment rights under the U.S. Constitution, conspiracy to commit these

constitutional violations, and for violations of the Fair Debt Collection Practice Act, 15 U.S.C. §§ 1692-1692(p). (Dkt. 35). Clark asserts claims against the City, the Police, and the OAG for unspecified federal constitutional violations and conspiracy to commit these violations.[1] (Dkt. 1); (Dkt. 54). Clark also brings an additional suit against the OAG for violation of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq*. (Dkt. 29 at p. 2). Finally, Clark's complaint asserts various Texas state law claims against the defendants. (*Id.* at pp. 2–6).

All defendants except the Police now seek dismissal of these claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), asserting that either this Court lacks competency to hear Clark's claims or that Clark has failed to plead facts establishing any valid claim. (Dkts. 31, 33, 34, 55). The Court assesses Clark's claims against the Police Department *sua sponte*.

## LEGAL STANDARD

**I.      Federal Rule of Civil Procedure 12(b)(1)**

---

[1] While Clark makes passing references to Deprivation of Rights Under Color of Law, 18 U.S.C. § 242, and the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, in his complaint, these statutes cannot be the basis of a claim against any of the defendants in this action. (Dkt. 1 at p. 13); (Dkt. 54 at p. 1); *Johnson v. Fed. Bureau of Investigation*, No. CV H-16-1337, 2016 WL 9776489, at *3 (S.D. Tex. Nov. 17, 2016) (18 U.S.C. § 242 does "not provide a private cause of action"); *Petrus v. Bowen*, 833 F.2d 581, 582 (5th Cir. 1987) (FOIA "gives[s] the federal district courts jurisdiction over certain actions against *agencies*"). Accordingly, Clark's claims under these statutes are **DISMISSED**.

3

A motion filed under Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge the subject matter jurisdiction of the district court to hear a case. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Association of Mississippi, Inc. v. City of Madison, Mississippi*, 143 F.3d 1006, 1010 (5th Cir. 1998). "Because Eleventh Amendment sovereign immunity deprives a federal court of jurisdiction to hear a suit against a state, a defendant's motion to dismiss asserting Eleventh Amendment sovereign immunity is properly brought under Rule 12(b)(1)." *Hopkins v. Wayside Sch.*, No. 23-50600, 2024 U.S. App. LEXIS 20101, at *7 (5th Cir. Aug. 9, 2024). Similarly, "standing and ripeness are essential components of federal subject-matter jurisdiction" and are challenged under Rule 12(b)(1). *Rosa v. Am. Water Heater Co.*, 177 F. Supp. 3d 1025, 1032 (S.D. Tex. 2016) (quoting *In re Jillian Morrison, L.L.C.*, 482 Fed. Appx. 872, 875 (5th Cir. 2012)).

When, such as here, "a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming*, 281 F.3d at 161. The party asserting that federal subject matter jurisdiction exists bears the burden of proving it by a preponderance of the evidence. *Ballew v. Continental Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012). Under Rule 12(b)(1), the Court may consider any of the following: (1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the

complaint supplemented by undisputed facts plus the Court's resolution of disputed facts. *Walch v. Adjutant General's Department of Texas*, 533 F.3d 289, 293 (5th Cir. 2008).

## II.     Federal Rule of Civil Procedure 12(b)(6)

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A motion filed under Federal Rule of Civil Procedure 12(b)(6) tests a pleading's compliance with this requirement and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming*, 281 F.3d at 161. A complaint can be dismissed under Rule 12(b)(6) if its well-pleaded factual allegations—when taken as true and viewed in the light most favorable to the plaintiff—do not state a claim that is plausible on its face. *Amacker v. Renaissance Asset Mgmt., LLC*, 657 F.3d 252, 254 (5th Cir. 2011).

Courts construe pleadings filed by *pro se* litigants under a less stringent standard of review. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). Under this standard, a "document filed *pro se* is 'to be liberally construed,' [], and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)). Nevertheless, "the liberal *pro se* pleading standard still demands compliance with procedural standards." *Payton v. United States*, 550 Fed. App'x 194, 195 (5th Cir. 2013).

5

When considering a motion filed under Federal Rule of Civil Procedure 12(b)(6), the Court generally may not go outside the pleadings. *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010). The court's review is limited to the complaint, any documents attached to the complaint, any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint, and matters subject to judicial notice under Federal Rule of Evidence 201. *Allen v. Vertafore, Inc.*, 28 F.4th 613, 616 (5th Cir. 2022); *George v. SI Group, Inc.*, 36 F.4th 611, 619 (5th Cir. 2022).

### III. 42 U.S.C. § 1983

42 U.S.C. § 1983 provides a private right of action for the deprivation of rights, privileges, and immunities secured by the Constitution or laws of the United States. Section 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

To establish § 1983 liability, Clark must prove that he suffered "(1) a deprivation of a right secured by federal law (2) that occurred under color of state law, and (3) was caused

6

by a state actor." *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citing *Bush v. Viterna*, 795 F.2d 1203, 1209 (5th Cir. 1986)). Clark must also show that the constitutional or statutory deprivation he suffered was intentional or due to deliberate indifference and not the result of mere negligence. *Id.*

## ANALYSIS

### I. Federal Constitutional Claims Against the Pasadena Police Department

The Police Department is not a proper party to this lawsuit because it is *non sui juris*, meaning it lacks the legal capacity to sue or be sued as a matter of law. *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 314 (5th Cir. 1991). Clark acknowledges in his complaint that the Police Department is "not a jural entity." (Dkt. 29 at p. 4). Accordingly, the Court dismisses it from this action. *See* 28 U.S.C. § 1915(e)(2)(B) (a district court "shall dismiss [a] case" brought by a plaintiff proceeding *in forma pauperis* "at any time if the court determines that ... the action ... fails to state a claim on which relief may be granted").

### II. Federal Constitutional Claims Under the Fourth and Sixth Amendments Against All Defendants

Clark globally asserts claims against all defendants for violations of his Fourth and Sixth Amendment rights. Clark alleges that all defendants individually or in a conspiracy violated his rights against false arrest, the fabrication of evidence, and wrongful

7

imprisonment.[2] (Dkt. 29 at p. 4). He also alleges that all defendants violated his right to be confronted with the witnesses against him. (*Id*. at p. 3). The Court finds that Clark does not have standing to bring these claims.

"'The party invoking federal jurisdiction bears the burden of establishing' standing." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411–12 (2013) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). The requirements for standing include "three elements," the first of which is that "the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is [] concrete and particularized." *Lujan*, 504 U.S. at 560. In this context, particularized "mean[s] that the injury must affect the plaintiff in a personal and individual way." *Id.* at 560 n.1.

Here, the alleged constitutional violations affected Clark's *son* in a personal and individual way—not Clark himself. Specifically, the alleged violations of the Fourth and Sixth Amendments occurred during the son's arrest, the subsequent investigation, and the son's imprisonment and allegedly violated the son's rights. In this way, Clark's allegations go towards his son's constitutional protections, not his own. Accordingly, Clark has failed to allege that Clark himself was injured in the particularized manner necessary to demonstrate standing.

---

[2] While Clark generally alleges that Rent Recovery was part of a conspiracy with respect to his son's arrest, there are no pleadings regarding this defendant's role in these specific constitutional violations. (Dkt. 35 at p. 3).

8

While Clark may have been able to sue for these violations on behalf of his son under 28 U.S.C. § 1654, it is his burden to establish that "federal or state law authorizes h[im] to proceed *pro se* on behalf of h[is] children." *Raskin on behalf of JD v. Dallas Indep. Sch. Dist.*, 69 F.4th 280, 287 (5th Cir. 2023). Clark has not addressed this burden in his pleadings and is thus foreclosed from bringing claims alleging violations of his son's constitutional rights. Accordingly, Clark does not have standing to bring these constitutional claims against any defendant and they are dismissed pursuant to Rule 12(b)(1).

### III. Federal Constitutional Law Claims against the OAG

Clark's federal constitutional claims against the OAG are barred by sovereign immunity. In support of his federal constitutional claims against the OAG, Clark alleges that the OAG violated his rights "by not treating him equal to all other requestors" of information under the Texas Public Information Act and deprived him of his Fourteenth Amendment rights "by failing to promptly serv[e] him by certified mail, a copy of [its] decision to withhold information from him." (Dkt. 29 at p. 2); (Dkt. 54 at p. 4).

Absent a state's consent or valid congressional abrogation, "a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Section 1983 does not abrogate the states' Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 345 (1979); *Aguilar v. Texas Dep't of Crim. Just.*, 160 F.3d 1052, 1054 (5th Cir. 1998) ("The Eleventh Amendment bars claims against a state brought

9

pursuant to 42 U.S.C. § 1983."). It is "well-established that the OAG, . . . as an arm of the state, is entitled to sovereign immunity pursuant to the Eleventh Amendment." *Aguero v. Texas Att'y Gen.*, No. 5:15-CV-51, 2015 WL 12710730, at *1 (S.D. Tex. Apr. 20, 2015).

Clark has not established that the State of Texas consented to be sued by him. Accordingly, Clark's claims are barred by sovereign immunity and are dismissed under Rule 12(b)(1).

### IV.   Americans with Disabilities Act Claims Against the OAG

Clark asserts claims under the Americans with Disabilities Act ("ADA") against the OAG for failing to provide Clark with "accommodation in accordance with ADA requirement." (Dkt. 54 at p. 6). These claims fall under Title II of the ADA. 42 U.S.C. § 12132 ("no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity").

This suit against the OAG is barred by sovereign immunity. The ADA provides that a "State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State Court of competent jurisdiction for a violation of this chapter." 42 U.S.C. § 12202. However, the Fifth Circuit has found that this provision did not successfully abrogate Texas's sovereign immunity for all ADA claims. *Sullivan v. Tex. A&M Univ. Sys.*, 986 F.3d 593, 596 (5th Cir. 2021). Instead, the ADA only validly abrogates state sovereign immunity for those actions under Title II "for

conduct that *actually* violates the Fourteenth Amendment." *United States v. Georgia*, 546 U.S. 151, 159 (2006).

"The abrogation inquiry for Title II claims requires an inquiry into: '(1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.'" *Luke v. Texas*, 46 F.4th 301, 305 (5th Cir. 2022) (quoting *Georgia*, 546 U.S. at 159). In this way, a court must determine on a claim-by-claim basis whether sovereign immunity has been abrogated by the ADA for a discrimination claim under Title II. *Georgia*, 546 U.S. at 159. As an arm of the state, the OAG is generally entitled to sovereign immunity, and therefore this Court must conduct the abrogation inquiry under Title II to determine if Clark is barred from bringing this suit.

The first step of this abrogation inquiry is to determine whether Clark has alleged State conduct violating Title II, and the Court finds that Clark has not alleged facts demonstrating any ADA claim in this case. "A plaintiff states a claim for relief under Title II [of the ADA] if he alleges: (1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability." *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011); *see* 42 U.S.C. § 12132. "To plead a cause of action under the [ADA], a plaintiff

must first plausibly allege he is disabled within the meaning of that Act.'" *Hughes v. Terminix Pest Control, Inc.*, No. 23-30617, 2024 WL 3440465, at *1 (5th Cir. July 17, 2024). Clark has not alleged that he has a disability, let alone named or described one. As a result, he has failed to allege an ADA claim under Title II.

Without alleging a colorable discrimination claim, Clark is unable to demonstrate that Congress has abrogated sovereign immunity for his claim against the OAG. As such, the OAG is entitled to Eleventh Amendment immunity. *See Block v. Tex. Bd. Of Law Examiners*, 952 F.3d 613, 619 (5th Cir. 2020) (finding plaintiff has not alleged conduct that violates Title II of the ADA and state-arm defendant is therefore entitled to Eleventh Amendment immunity). Accordingly, this claim must be dismissed under Rule 12(b)(1).

**V.  Federal Constitutional Claims against Arbor and Rent Recovery**

Clark asserts claims against Arbors and Rent Recovery for violations of unspecified "1983 civil …and constitutional rights" and his Fourteenth Amendment rights. The Court finds that Clark has failed to state such claims against either Arbors or Rent Recovery.

Arbors and Rent Recover are private entities, not state officials. Generally, "constitutional guarantees of individual liberty and equal protection do not apply to the actions of private entities." *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 619 (1991). "[T]he Fourteenth Amendment, by its very terms, prohibits only state action," and it "erects no shield against merely private conduct, however discriminatory or wrongful." *United States v. Morrison*, 529 U.S. 598, 621 (2000) (quoting *Shelley v. Kraemer*, 334 U.S.

1, 13, and n.12 (1948)). As a result, Clark must first establish that the conduct he challenges constituted "state action."

To establish state action in these circumstances, "the private and the public actors must have entered into an agreement to commit an illegal act, and [Clark's] constitutional rights must have been violated." *Tebo v. Tebo*, 550 F.3d 492, 496 (5th Cir. 2008). Here, Clark "must allege specific facts to show an agreement." *Id.* (quotation marks omitted).

Clark generally alleges that Arbors and Rent Recovery participated in a wide ranging "cover up" and "conspiracy" with the City and the OAG by "fabricating that a robbery actually happened." (Dkt. 1 at p. 8); (Dkt. 29 at p. 4.) Clark further alleges that Arbor used its "lease agreement document" to "conspire" with the City to harm Clark and his son. *Id*.

Such global assertions are insufficient to show that Arbors and Rent Recovery engaged in state action. *See Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982) (affirming that plaintiff failed to allege conspiracy where the "general charges" were "conclusory" and "no specific allegation of facts tending to show a prior agreement ha[d] been made"). While the City and the OAG are state actors, Clark's general allegations are conclusory and lack the factual enhancement necessary to demonstrate an agreement under 12(b)(6). Accordingly, Clark has not stated a claim against Arbors and Rent Recovery for violations of unspecified "1983 civil … and constitutional rights" or his Fourteenth Amendment rights and these claims are dismissed under 12(b)(6).

VI.     **Fair Debt Collection Practice Act Claims**

13

Clark's claims against Arbors and Rent Recovery fail under the Fair Debt Collection Practice Act ("FDCPA"). Clark's FDCPA claim against Arbors does not contain allegations that Arbors is a debt collector within the meaning of the statute and therefore must be dismissed under Rule 12(b)(6). Clark's claim against Rent Recovery is brought outside of the one-year statute of limitations and must be dismissed as time barred.

*i.    Claim Against Arbors*

Clark has failed to state a claim under the FDCPA against Arbors. "To state a claim under the FDCPA a plaintiff must allege facts showing that: (1) the plaintiff has been the object of collection activity arising from consumer debt; (2) the defendant is a debt collector defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Woodley v. Resurgent Cap. Servs., L.P.*, No. CV H-24-1587, 2024 WL 2806189, at *2 (S.D. Tex. May 31, 2024) (internal quotation marks omitted). "Debt collector" under the FDCPA means "any person…who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due *another*." 15 U.S.C. § 1692a(6) (emphasis added).

Clark has not alleged facts showing that Arbors is a debt collector. His complaint alleges that Arbors is the entity to whom the debt is "owed or due," placing Arbors squarely outside the requisite character of a debt collector under the FDCPA. Specifically, Clark alleges that Arbors "construed up" an alleged debt owed to Arbors as the landlord and sold that debt to Rent Recovery. (Dkt. 1 at p. 3); (Dkt. 35 at p. 2). In this way, Clark alleges that the debt at issue is due to *Arbors*, not another individual as required by the

14

statute. Accordingly, Clark has failed to allege that Arbors is a debt collector under the FDCPA, and this claim is dismissed under 12(b)(6).

   ii. *Claim Against Rent Recovery*

Clark's claim against Rent Recovery is barred by the FDCPA's one-year statute of limitations. The "text of § 1692k(d) clearly states that an FDCPA action 'may be brought ... within one year from the date on which the violation occurs'" and the "limitations period begins to run on the date the alleged FDCPA violation actually happened." *Rotkiske v. Klemm*, 589 U.S. 8, 13 (2019). Here, the attachments to the complaint establish that Rent Recovery was collecting the debt at least by September 2021. (Dkt. 1-1 at p. 26). The "Notice of Collection" letter dated September 22, 2021, from Rent Recovery to Clark explains that Rent Recovery represents Arbors in its effort to collect the debt. *Id*. Clark did not bring this lawsuit until over a year later on October 17, 2023. (Dkt. 1 at p. 26). Accordingly, Clark's FDCPA claims against Rent Recovery are dismissed as time barred.

**VII. Federal Constitutional Law Claims Against City of Pasadena**

Clark has not stated a claim against the City for violation of his federal constitutional rights or for engaging in a conspiracy with others to do so. "Section 1983 provides a remedy against 'any person' who, under color of state law, deprives another of rights protected by the Constitution." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). A local government may not be sued under § 1983 for the deprivation of rights guaranteed by the Constitution or federal law inflicted solely by its employees or agents. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) ("[A] municipality cannot be held liable

15

under § 1983 on a respondeat superior theory."). However, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury," the government agency is liable under § 1983. *Id*.

To state a claim under § 1983, "a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

Clark has not pled facts establishing any of the elements of municipal liability. He has not identified a policymaker, has not pointed to an official policy or custom, nor has he alleged a violation of constitutional rights whose moving force was the policy or custom. His claims against the City thus fail to state a claim on which relief may be granted, and his conspiracy claims are "not actionable without an actual violation of section 1983." *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995); *Mayfield v. Butler Snow, L.L.P.*, 75 F.4th 494, 501 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 810, 218 L. Ed. 2d 24 (2024) (plaintiffs could not proceed on civil conspiracy claim to the extent that claim relied on their federal § 1983 claim because the § 1983 claim was correctly dismissed). This claim must be dismissed under Rule 12(b)(6).

## VIII. Supplemental Jurisdiction

Clark asserts several claims under state law, including negligence, violations of the Texas Public Information Act (and a conspiracy to violate his rights under that Act), defamation, and violations of the Texas Property Code. Federal district courts have the

discretion to decline to exercise supplemental jurisdiction over state-law claims. *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008). Having dismissed all federal causes of action in this case, the Court will decline to exercise supplemental jurisdiction over Clark's state-law claims and will dismiss those claims without prejudice.

## CONCLUSION

For the reasons stated above, the Court finds that the motions to dismiss filed by the City (Dkt. 33), Arbors (Dkt. 34), Rent Recovery (Dkt. 31), and the OAG (Dkt. 55) should be **GRANTED**, and Clark's claims against the Police Department are **DISMISSED**. Further, the City's motion to enter judgment (Dkt. 39) is **DENIED AS MOOT** and all other pending motions are **DENIED AS MOOT.**

SIGNED at Houston, Texas on September 30, 2024.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE

17